1 Jeff Pollack, SBN 72274
ROBERT A. GOLDSTEIN,
2 A PROFESSIONAL LAW CORPORATION
1430 Franklin Street, Suite 202
3 Oakland, California 94612
Tele: (510) 834-6720
4 Fax: (510) 834-5476
Attorney for plaintiff Chudi C. Iwu

5

6

ORIGINAL
FILED

DEC 2 8 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

7                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
8

9 CHUDI C. IWU                    )    Case No. C07-06506
                                  )                            CRB
10                                )
          Plaintiff,              )    COMPLAINT FOR DAMAGES;
11                                )    DEMAND FOR JURY TRIAL
     vs.                          )
12                                )
   GENESIS LENDING GROUP, INC.,   )
13 PETER A. CAMPELLONE,           )
   RONALD GRAVES, SARAH GRAVES    )
14                                )
          Defendants.             )
15 _____ )

16                                   **I.**

17                              **JURISDICTION**

18        1.    Jurisdiction is conferred upon this court pursuant to 12 U.S.C. Section 2614 and

19 28 U.S.C. Section 1331 in that the first and second claims for relief alleged infra. arise under 12

20 U.S.C. Section 2607 and the laws of the United States, and as to the third through eleventh claims

21 for relief alleged infra., which claims are brought under California law, this court has

22 supplemental jurisdiction pursuant to 28 U.S.C. Section 1367 to hear and determine those claims

23 because they are related to plaintiff's federal claims and arise out of a common nucleus of related

24 facts and form part of the same case and controversy under Article III of the United States

25 Constitution.

26                                   **II.**

27                                 **VENUE**

28        2.    Venue is proper in the Northern District of California pursuant to 28 U.S.C.

1    Section 1391(b)(2) in that a substantial part of the events or omissions on which all of plaintiff's

2    claims herein are based occurred in the Northern District of California and the real property

3    securing the loan that is the subject matter of this transaction is located in Pittsburg, California

4    which is within the Northern District of California.

### III.

### PARTIES

7    3. At all relevant times alleged herein, plaintiff CHUDI C. IWU along with his wife owned

8    and resided in a single family home commonly known as 59 Glen Canyon Court, Pittsburg,

9    California 94565 (hereinafter referred to as "plaintiff's home" or simply "the home").

10   4. At all relevant times alleged herein, defendant GENESIS LENDING GROUP, INC.

11   (hereinafter "GENESIS"), was and is a California corporation licensed by the California

12   Department of Real Estate (hereinafter "DRE") as a real estate broker.  GENESIS' office is

13   presently located at 28241 Crown Valley Parkway, Suite 440, Laguna Niguel, California 92677-

14   441.

15   5. At all relevant times alleged herein defendant RONALD GRAVES was an agent and/or

16   employee of defendants GENESIS and PETER ANGELO CAMPELLONE (described in

17   paragraph 6 infra.), was licensed by the DRE as a salesperson, and worked in GENESIS' office

18   located at 8925 Research Drive, Irvine, California 92618, and in doing the things alleged herein,

19   was acting in the course and scope of his agency and/or employment with both defendants

20   GENESIS and PETER ANGELO CAMPELLONE.

21   6.  At all relevant times alleged herein defendant SARAH GRAVES was an employee

22   of GENESIS, was licensed by the DRE as a salesperson, and worked in GENESIS' office located

23   at 8925 Research Drive, Irvine, California 92618. At all relevant times herein SARAH GRAVES

24   was the wife of defendant RONALD GRAVES, and according to plaintiff's information and

25   belief, knowingly and willingly conspired and agreed with defendant RONALD GRAVES and

26   and with defendant PETER ANGELO CAMPELLONE, who is described in paragraph 7 infra.,

27   to engage in all of the illegal conduct alleged in this complaint which conduct forms the bases of

28   all of the claims for relief alleged herein.

7. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein defendant PETER ANGELO CAMPELLONE ("CAMPELLONE") was the sole shareholder and president of GENESIS, was GENESIS' designated corporate officer to hold a DRE broker's license pursuant to California Business & Professions Code Section 10211 on behalf of GENESIS and, accordingly, was responsible, pursuant to California Business & Professions Code Section 10159.2, for supervising and controlling GENESIS' officers and employees to secure full compliance with Division 4 of the California Business & Professions Code - i.e., California Business & Professions Code Sections 1000 through 11506 - including the prohibition in Division 4 against fraudulent and dishonest dealing as proscribed in Business & Professions Code Section 10176(a), (b), (c), (g), and (i). At all relevant times herein, CAMPELLONE failed and refused to perform his obligations as GENESIS' designated corporate officer to prevent all of the illegal conduct alleged herein and, accordingly, CAMPELLONE is vicariously liable for the illegal conduct of all of the other defendants alleged herein. Plaintiff is further informed and believes and thereon alleges that at all relevant times herein defendant CAMPELLONE knowingly and willingly conspired and agreed with defendants RONALD GRAVES, SARAH GRAVES, and GENESIS to engage in all of the illegal conduct alleged in this complaint which conduct forms the bases of all of the claims for relief alleged herein.

8. Plaintiff is informed and believes and thereon alleges that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between defendants CAMPELLONE and GENESIS, such that any individuality and separateness between defendants CAMPELLONE and GENESIS have ceased, and defendant GENESIS is the alter ego of defendant CAMPELLONE in that defendant GENESIS is, and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by the defendant and the risks of loss, its capitalization was illusory and/or trifling,

9. Adherence to the fiction of the separate existence of the defendant GENESIS as a corporate entity distinct from defendant CAMPELLONE would permit an abuse of the corporate privilege and would sanction fraud or promote injustice in that it would result in the legitimate creditors of GENESIS to remain unpaid.

**IV.**

**FACTS**

10. In about November 2006 plaintiff received in the mail at his home a written solicitation from GENESIS offering its services to arrange a new refinance loan for plaintiff secured by a deed of trust on plaintiff's home. In response to the solicitation, plaintiff in about November 2006 called the telephone number listed for GENESIS in the solicitation and spoke to RONALD GRAVES (hereinafter "GRAVES"). Plaintiff told GRAVES that he already had two existing mortgage loans on his home requiring monthly payments totaling $4,531 per month (which amount included an impound component for taxes and insurance), and that he wanted to refinance (i.e., pay off and replace) both mortgage loans with a new negative amortization loan secured by a new first deed of trust on plaintiff's home that would require monthly mortgage payments of no more that $3,000 per month for at least one year. Plaintiff explained to GRAVES that plaintiff's wife was planning to either quit or substantially reduce her employment for approximately one year in order to go to school to obtain a particular educational certificate and that this would cause plaintiff's family income to be substantially reduced during that approximate one-year period making a negative amortization loan with a monthly payment of no more than $3,000 per month appropriate for plaintiff and his wife at least for that period of time.

11. In response to plaintiff's description of the type of loan he was seeking as alleged in paragraph 10 supra., GRAVES represented to plaintiff that:

       A. GENESIS could and would arrange the type of loan plaintiff wanted, but because plaintiff's credit score was too low, GENESIS would have to first arrange a temporary refinance mortgage loan on plaintiff's home which would pay off and replace plaintiff's existing first and second mortgage loans and pay off most of plaintiff's non-mortgage debts in order to increase plaintiff's credit score to a level that would qualify him for a negative amortization loan with monthly payments of no more than $3,000 per month;

       B. Promptly after arranging the temporary mortgage loan described in

1  subparagraph A above, GENESIS could and would arrange another refinance

2  mortgage loan on plaintiff's home that would pay off and replace the temporary

3  mortgage loan described in subparagraph A above and that would require

4  monthly mortgage payments of no more than $3,000 per month for at least a

5  year;

6  C. If plaintiff obtained the temporary mortgage loan described in subparagraph

7  A. above, GENESIS would not charge plaintiff any loan fees for arranging the

8  second mortgage loan described in subparagraph B above; and

9  D. If for some unforeseen reason Genesis did not arrange the second loan

10  described in subparagraph B above, Genesis would refund plaintiff's appraisal

11  fee.

12  Copies of two emails dated November 24, 2006 and January 13, 2007 that GRAVES sent to

13  plaintiff documenting his representations to plaintiff set forth in subparagraphs C and D above

14  are attached hereto, marked as Exhibits "A" and "B," respectively, and incorporated herein.

15  12. The representations made by GRAVES set forth in paragraph 11 supra. were in fact

16  false. The true facts were that:

17  (A) GENESIS, after making a temporary refinance mortgage loan to plaintiff,

18  either could not arrange or did not intend to arrange another refinance mortgage

19  loan for plaintiff secured by plaintiff's home that would be a negative

20  amortization loan and would require monthly payments of no more than $3,000

21  per month;

22  (B) GENESIS, after making a temporary refinance mortgage loan to plaintiff,

23  intended to charge plaintiff loan fees in connection with arranging a subsequent

24  mortgage loan to plaintiff;

25  (C) GENESIS did not intend to refund to plaintiff any appraisal fees that plaintiff

26  paid in connection with loans GENESIS arranged for plaintiff even if GENESIS,

27  did not arrange a loan for plaintiff a mortgage loan that required monthly

28  payments of no more than $3,000 per month.

13. When GRAVES made the representations to plaintiff set forth in paragraph 11 supra., he knew them to be false and made these representations with the intention of deceiving and defrauding plaintiff and to induce plaintiff to act in reliance on these representations in the manner hereafter alleged, or with the expectation that plaintiff would so act.

14. In connection with any mortgage loans that it would arrange for plaintiff, GENESIS at all relevant times intended to request and receive and did request and receive from the lender a Yield Spread Premium which generally is a payment of money that a lender makes directly to a mortgage broker outside of the close of escrow of the subject loan in consideration for the mortgage broker arranging a loan with the lender for the borrower with an interest rate that is higher (i.e., above par) than the interest rate that the borrower otherwise qualified to receive from the lender and that the lender would otherwise extend to the borrower.

15. In connection with any loan GENESIS arranged for plaintiff that would be secured by plaintiff's home, GENESIS, as a mortgage broker licensed by the DRE and also pursuant to the requirements of Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. 2601 - 2617) at 24 C.F.R. Section 3500.7(a), (c); Appendix B To Part 3500 - Illustrations Of Requirements Of RESPA, Fact Situation 13;  and California Business & Professions Code Section 10240(c), had an affirmative duty to disclose to plaintiff (a) that GENESIS would request and receive from the lender a payment of money constituting a Yield Spread Premium, (b) that in exchange for paying a Yield Spread Premium to GENESIS, the lender would require GENESIS to arrange a loan for plaintiff that would contain an interest rate substantially above the interest rate that the lender would otherwise extend to plaintiff, and (c) that as a result of the Yield Spread Premium that GENESIS would receive from the lender, the monthly payments that plaintiff would be required to pay to the lender would be substantially higher than the monthly payments plaintiff would pay to the lender if the lender did not pay GENESIS a Yield Spread Premium.

16. From November 2006 through January 17, 2007 GRAVES suppressed and concealed from plaintiff (a) that GENESIS would request and receive a Yield Spread Premium from the lender from whom it was arranging a mortgage loan for plaintiff, (b) that in exchange for receiving a Yield Spread Premium from the lender, GENESIS would arrange a loan for

1   plaintiff that would contain an interest rate substantially higher than the interest rate the lender

2   would otherwise charge plaintiff for the loan, and (c) that as a result of the Yield Spread

3   Premium that GENESIS would receive from the lender, the monthly payments that plaintiff

4   would be required to pay to the lender would be substantially higher than the monthly payments

5   plaintiff would otherwise be required to pay on the loan if GENESIS did not receive a Yield

6   Spread Premium from the lender.

7           17. GRAVES failed to disclose the facts alleged in paragraph 16 supra. and suppressed

8   and concealed said facts with the intent to induce plaintiff to sign the final loan documents for a

9   mortgage loan that GENESIS would arrange for plaintiff.

10          18. Plaintiff, at the time the representations set forth in paragraph 11 supra. were made

11  by GRAVES and at the time plaintiff took the actions herein alleged was ignorant of the falsity

12  of the representations and believed them to be true. In reliance on these representations and also

13  in ignorance of the facts that GRAVES suppressed and concealed set forth in paragraph 16

14  supra. was induced to and did agree to sign the final documents for a loan from Countrywide

15  Home Loans (hereinafter "Countrywide") in January 2007 (hereinafter "the January 2007 loan")

16  that GENESIS arranged which loan closed escrow on January 18, 2007. Had plaintiff known the

17  actual facts, he would not have taken such action. Plaintiff's reliance in GRAVES' affirmative

18  representations alleged in paragraph 11 was justified because plaintiff had no knowledge of the

19  falsity of the representations and no reason to suspect that the representations were false.

20          19. The January 2007 loan was in the principal sum of $725,350, was secured by a first

21  deed of trust on plaintiff's home, paid off the two existing mortgage loans on plaintiff's home

22  and some of plaintiff's non-mortgage debts, bore interest at 10.15% per annum, and required

23  interest-only payments of $6,135.25 per month which was roughly $2,000 more per month than

24  the amount of the total amount of the monthly mortgage payments that plaintiff was paying on

25  his two previous mortgage loans on the home. In connection with the January 2007 loan

26  GENESIS charged plaintiff loan fees totaling $13,375 and, in addition, received a Yield Spread

27  Premium from the lender, Countrywide, of $14,507. A copy of the final escrow closing

28  statement for this loan is attached hereto, marked Exhibit "C," and incorporated herein.

20. Commencing sometime in February 2007 and continuing to April 3, 2007 GRAVES, in several telephone conversations with plaintiff, represented to plaintiff that:

A. Lenders were no longer offering negative amortization loans to the public and, consequently, GENESIS could not arrange a refinance mortgage loan for plaintiff secured by plaintiff's home that would pay off and replace the January 2007 loan and at the same time require monthly payments of no more than $3,000 per month, and

B. The best loan GENESIS could arrange for plaintiff that would reduce the $6,135.25 per month payments plaintiff was required to make on the January 2007 was a loan that bore interest at the rate of 7.625% per annum and required interest-only monthly payments of $4,746.56 per month.

21. The representations made by GRAVES set forth in paragraph 20 supra. were in fact false. The true facts were that lenders were still offering negative amortization loans to the public and GENESIS could have arranged such a loan for plaintiff that either would have required monthly payments of no more that $3,000 per month or substantially less than $4,746.56 per month.

22. When GRAVES made the representations to plaintiff set forth in paragraph 20 supra. he knew them to be false and made these representations with the intention of deceiving and defrauding plaintiff and inducing plaintiff to act in reliance on these representations in the manner hereafter alleged, or with the expectation that plaintiff would so act.

23. Plaintiff, at the time the representations set forth in paragraph 20 supra. were made by GRAVES and at the time plaintiff took the actions herein alleged, was ignorant of the falsity of the representations and believed them to be true.

24. From February 2007 through April 4, 2007 GRAVES suppressed and concealed from plaintiff the following facts pertaining to the loan that GENESIS was arranging for plaintiff to pay off and replace the January 2007 loan: (a) that GENESIS would request and receive from the lender a payment of money constituting a Yield Spread Premium, (b) that in exchange for receiving a Yield Spread Premium from the lender, GENESIS would arrange a

loan for plaintiff that would contain an interest rate substantially higher than the interest rate that the lender would otherwise charge plaintiff for the loan, and (c) that as a result of the Yield Spread Premium that GENESIS would receive from the lender, the monthly payments that plaintiff would be required to pay to the lender would be substantially higher than the monthly payments plaintiff would otherwise pay on the loan if GENESIS did not receive a Yield Spread Premium from the lender.

25. GRAVES failed to disclose the facts alleged in paragraph 24 supra. and suppressed and concealed said facts with the intent to induce plaintiff to sign the final loan documents for the mortgage loan that GENESIS would arrange for plaintiff to pay off and replace the January 2007 loan.

26. Plaintiff, at the time GRAVES failed to disclose the facts set forth in paragraph 24 supra. and suppressed and concealed said facts, was ignorant of said facts. If plaintiff had been aware of the existence of those facts, plaintiff would not have agreed to said loan.

27. In reliance on the representations set forth in paragraph 20 and also in ignorance of the facts that GRAVES suppressed and concealed set forth in paragraph 24, plaintiff was induced to and did agree to sign the final documents for a loan from Mortgage Investment Lending Associates that GENESIS arranged in April 2007 (hereinafter "the April 2007 loan) which closed escrow on April 4, 2007. Had plaintiff known the actual facts, he would not have taken such action. Plaintiff's reliance on GRAVES' affirmative representations alleged in paragraph 20 was justified because plaintiff had no knowledge of the falsity of the representations and no reason to suspect that the representations were false.

29. The April 2007 loan, which paid off and replaced the January 2007 loan, was in the sum of $747,000, was secured by a new first deed of trust on plaintiff's home, bore interest at 7.625% per annum, and required interest-only payments of $4,746.56 per month. Contrary to GRAVES' promise as set forth in paragraph 11.C. that GENESIS would not charge any loan fees for the second loan it would arrange for plaintiff, GENESIS charged plaintiff $5,495 in loan fees for this loan and, in addition, received a Yield Spread Premium from the lender, Mortgage Investment Lending Associates, of $4,855. A copy of the final escrow closing statement for the

1  April 2007 loan is attached hereto, marked Exhibit "D," and incorporated herein.

2

3

4                                      **V.**

5                          **FIRST CLAIM FOR RELIEF**

6  **Violation of the Anti-Kick Back Provisions of RESPA In Connection With The January**
7                                   **2007 Loan**

8      30. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through

9  29, inclusive, as though fully set forth herein.

10     31. The January 2007 loan that Genesis arranged for plaintiff was a "federally related

11 mortgage loan" as that term is defined by RESPA at 12 U.S.C. Section 2601(1) and

12 implemented by Regulation X at 24 C.F.R. Section 3500.2 et seq.

13     32. GENESIS' mortgage brokerage services to plaintiff in connection with the January

14 2007 loan constitute "settlement services" as that term is defined by RESPA at 12 U.S.C.

15 Section 2601(3).

16     33. Plaintiff is informed and believes and thereon alleges that the interest rate on the

17 January 2007 loan, which was 10.15% per annum, exceeded the interest rate for which the

18 lender would have otherwise made a loan to plaintiff (i.e., the par rate) by at least two (2%)

19 per cent.

20     34. Plaintiff is informed and believes and thereon alleges that in exchange for

21 arranging the January 2007 loan at an above-par interest rate, Countrywide paid GENESIS

22 directly and outside the escrow for the loan a Yield Spread Premium of $14,507.

23     35. GENESIS provided no legitimate goods or services for the Yield Spread Premium it

24 received from Countrywide in connection with the January 2007 loan because of

25                 (A) GRAVES' continuing  and repeated misrepresentations to plaintiff from

26                 November 2006 through approximately January 18, 2007, which was the date

27                 the January 2007 loan closed escrow, which misrepresentations are set forth in

28                 paragraph 11 supra.;

1        (B) GENESIS' failure to arrange the type of loan it originally promised plaintiff

2        it would arrange for him as set forth in paragraph 11.B. supra;

3        (C) GENESIS' failure to disclose to plaintiff that it would receive a Yield Spread

4        Premium in connection with the January 2007 loan on a Good Faith Estimate

5        advance disclosure form or other authorized form in violation of RESPA at 24

6        C.F.R. Section 3500.7(a), (c); Appendix B To Part 3500 - Illustrations Of

7        Requirements Of RESPA, Fact Situation 13, and California Business &

8        Professions Code Section 10240(c);

9        (D) GENESIS' concealment from plaintiff that the reason GENESIS was

10        receiving a Yield Spread Premium from the lender in connection with the

11        January 2007 loan was that GENESIS was arranging a loan for plaintiff that

12        contained a higher interest rate than the interest the same lender would

13        otherwise offer to plaintiff.

14      36. GENESIS' receipt of a Yield Spread Premium from the lender in connection with the

15  January 2007 loan violates RESPA's prohibition set forth in 12 U.S.C. Section 2607(a) against

16  providers of settlement services receiving referral fees and kickbacks.

17      37. GENESIS' violation of RESPA is a violation that subjects GENESIS to a civil

18  penalty pursuant to 12 U.S.C. Section 2607(d)(2) of three times the amount of the Yield Spread

19  Premium that it received from Countrywide for arranging the January 2007 loan. .

20      WHEREFORE plaintiff prays for judgment as hereinafter set forth:

21                                  **VI.**

22                     **SECOND CLAIM FOR RELIEF**

23     **Violation of the Anti-Kick Back Provisions of RESPA In Connection With The April**

                                  **2007 Loan**

24

25      38. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 29,

26  inclusive, as though fully set forth herein.

27      39. The April 2007 loan that GENESIS arranged for plaintiff was a "federally related

28  mortgage loan" as that term is defined by RESPA at 12 U.S.C. Section 2601(1) and

1    implemented by Regulation X at 24 C.F.R. Section 3500.2 et seq.

2         40. GENESIS' mortgage brokerage services to plaintiff in connection with the April

3    2007 loan constitute "settlement services" as that term is defined by RESPA at 12 U.S.C.

4    Section 2601(3).

5         41. Plaintiff is informed and believes and thereon alleges that the interest rate on the

6    April 2007 loan, which was 7.625% per annum, substantially exceeded the interest rate that the

7    lender would have otherwise extended to plaintiff on the April 2007 loan.

8         42. Plaintiff is informed and believes and thereon alleges that in exchange for arranging

9    the above-par-rate April 2007 loan for plaintiff, the lender, which was Mortgage Investment

10   Lending Associates (hereinafter "MILA"), paid GENESIS a Yield Spread Premium directly and

11   outside the escrow in the sum of $4,855.00.

12        43. GENESIS provided no legitimate goods or services for the Yield Spread Premium it

13   received from MILA in connection with the April 2007 loan because of:

14        (A) GRAVES' misrepresentations to plaintiff from February 2007 through

15        approximately April 4, 2007 as set forth in paragraph 20 supra.;

16        (B) GENESIS' failure to arrange the type of loan it originally promised plaintiff

17        it would arrange for him as set forth in paragraph 11.B.;

18        (C) GENESIS' failure to disclose to plaintiff that it would receive a Yield Spread

19        Premium in connection with the April 2007 loan on a Good Faith Estimate

20        advance disclosure form or other authorized form in violation of RESPA at 24

21        C.F.R. Section 3500.7(a), (c); Appendix B To Part 3500 - Illustrations Of

22        Requirements Of RESPA, Fact Situation 13, and California Business &

23        Professions Code Section 10240(C); and

24        (D) GENESIS' concealment from plaintiff that the reason GENESIS was

25        receiving a Yield Spread Premium from the lender in connection with the April

26        2007 loan was that the loan GENESIS was arranging for plaintiff contained a

27        higher interest rate than the interest rate the lender would otherwise extend to

28        plaintiff.

COMPLAINT FOR DAMAGES & RESTITUTION;
DEMAND FOR JURY TRIAL                                    12

44. GENESIS' receipt of the Yield Spread Premium from MILA in connection with the April 2007 loan violates RESPA's prohibition set forth in 12 U.S.C. Section 2607(a) against providers of settlement services receiving referral fees and kickbacks.

45. GENESIS' violation of RESPA is a violation that subjects GENESIS to a civil penalty pursuant to 12 U.S.C. Section 2607(d)(2) of three times the amount of the Yield Spread Premium it received for its settlement services in arranging the April 2007 loan.

WHEREFORE plaintiff prays for judgment as hereinafter set forth:

## VI.

### THIRD CLAIM FOR RELIEF
**[Intentional Misrepresentation & Concealment Pertaining To The January 2007 Loan]**

46. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 29, inclusive, as though fully set forth herein.

47. As a proximate result of defendants' fraudulent conduct as alleged herein, plaintiff has been damaged in the sum of $17,513.15 representing the fees that plaintiff paid in connection with the January 2007 loan as shown on the final escrow closing statement for said loan, a copy of which is attached hereto, marked Exhibit "C" and incorporated herein.

48. The aforementioned conduct of defendants was an intentional misrepresentation, deceit, and concealment of a material facts known to the defendants with the intention on the part of the defendants of thereby depriving plaintiff of property or legal rights or otherwise cause injury and was despicable conduct that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages in the sum of $300,000.00.

WHEREFORE plaintiff prays for judgment as hereinafter set forth:

## VII.

### FOURTH CLAIM FOR RELIEF
**[Negligent Misrepresentation Pertaining To The January 2007 Loan]**

49. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 29 as though fully set forth herein.

50. When GRAVES made the representations set forth in paragraph 11.B. supra., he had

no reasonable ground for believing them to be true in that GRAVES did not know whether plaintiff would qualify to obtain a negative amortization loan that would require monthly payments of no more than $3,000 per month or whether lenders would offer such a loan product to borrowers at the time that GRAVES promised that he would arrange such a loan for plaintiff.

51. As a proximate result of defendants' negligent conduct as alleged herein, plaintiff has been damaged in the sum of $17,513.15 representing the fees that plaintiff paid in connection with the January 2007 loan as shown on the final escrow closing statement for said loan, a copy of which is attached hereto, marked Exhibit "C" and incorporated herein.

WHEREFORE, plaintiff prays for judgment hereinafter set forth:

## VII.

### FIFTH CLAIM FOR RELIEF
**[Intentional Misrepresentation & Concealment Pertaining To The April 2007 Loan]**

52. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 29, inclusive, as though fully set forth herein.

53. As a proximate result of defendants' fraudulent conduct as alleged herein, plaintiff has been damaged in the sum of $9,694.00 representing the fees that plaintiff paid in connection with the April 2007 loan as shown on the final escrow closing statement for said loan, a copy of which statement is attached hereto, marked Exhibit "D" and incorporated herein.

54. The aforementioned conduct of defendants was an intentional concealment of material facts known to the defendants with the intention on the part of the defendants of thereby depriving plaintiff of property or legal rights or otherwise causing injury and was despicable conduct that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages in the sum of $300,000.00.

WHEREFORE plaintiff prays for judgment as hereinafter set forth:

## VIII.

### SIXTH CLAIM FOR RELIEF
**[Negligent Misrepresentation Pertaining To The April 2007 Loan]**

55. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 29,

inclusive, as though fully set forth herein.

56. When GRAVES made the representations set forth in paragraph 20A.and B. supra., he had no reasonable ground for believing them to be true in that GRAVES did not know whether lenders were still offering negative amortization loans to the public and whether GENESIS could have arranged such a loan for plaintiff that either may have required monthly payments of no more that $3,000 per month or, if not, then at least substantially less than $4,746.56 per month.

57. As a proximate result of defendants' negligent conduct as alleged herein, plaintiff has been damaged in the sum of $9,694.00 representing the fees that plaintiff paid in connection with the April 2007 loan as shown on the final escrow closing statement for said loan, a copy of which statement is attached hereto, marked Exhibit "D" and incorporated herein.

WHEREFORE, plaintiff prays for judgment hereinafter set forth:

### IX.

### SEVENTH CLAIM FOR RELIEF
#### [Breach Of Fiduciary Duty In Arranging The January 2007 Loan]

58. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 29, inclusive, as though fully set forth herein.

59. With regard to the January 2007 loan, defendants breached their fiduciary duties as plaintiff's real estate mortgage broker by making the misrepresentations to plaintiff set forth in paragraph 11 supra. and by concealing the facts set forth in paragraph 16 supra.

60. As a result of defendants' breach of fiduciary duty, plaintiff has been damaged in connection with the January 2007 loan in the sum of $17,513.15 representing the fees that plaintiff paid in connection with the January 2007 loan as shown on the final escrow closing statement for said loan a copy of which statement is attached hereto, marked Exhibit "C" and incorporated herein.

61. Also, as a result of defendants' breach of fiduciary duty, to the extent said breach was intentional on the part of defendants, defendants are obligated to disgorge to plaintiff all fees they earned in connection with the January 2007 loan which fees total $13,375 and are set

forth in the final escrow closing statement for said loan, a copy of which statement is attached

hereto as Exhibit "C" and incorporated herein.

WHEREFORE plaintiff prays for judgment as hereinafter set forth:

## X.

### EIGHTH CLAIM FOR RELIEF
**[Breach Of Fiduciary Duty In Arranging The April 2007 Loan]**

62. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 29, inclusive, as though fully set forth herein.

63. With regard to the April 2007 loan, defendants breached their fiduciary duties as plaintiff's real estate mortgage broker by making the misrepresentations to plaintiff set forth in paragraph 20 supra. and by concealing the facts set forth in paragraph 24 supra.

60. As a result of defendants' breach of fiduciary duty, plaintiff has been damaged in connection with the April 2007 loan in the sum of $9,694.00 representing the fees that plaintiff paid in connection with the April 2007 loan as shown on the final escrow closing statement for said loan a copy of which statement is attached hereto, marked Exhibit "D" and incorporated herein.

61. Also as a result of defendants' breach of fiduciary duty, to the extent said breach was intentional on the part of defendants, defendants are obligated to disgorge to plaintiff all fees they earned in connection with the April 2007 loan which fees total $5,495 and are set forth in the final escrow closing statement for said loan, a copy of which statement is attached hereto as Exhibit "D" and incorporated herein.

WHEREFORE plaintiff prays for judgment as hereinafter set forth:

## XI.

### NINTH CLAIM FOR RELIEF

### [Negligence]

62.    Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 through 29, inclusive, as though fully set forth herein.

63.    As a mortgage broker licensed by the DRE, GENESIS owed plaintiff a duty to

1    exercise reasonable care and diligence in arranging any mortgage loan for plaintiff.

2        64.    Defendants acted negligently by improperly failing to consider, investigate or

3    evaluate prior to arranging the January 2007 loan whether plaintiff would qualify for the loan

4    he was seeking which was a negative amortization mortgage loan which would require

5    monthly payments of no more than $3,000 per month for at least one year and whether such a

6    loan would be otherwise available to plaintiff. Defendants also acted negligently after the

7    January 2007 loan closed escrow by failing to actually arrange a negative amortization

8    mortgage loan with monthly payments of no more $3,000 per month for at least one year or at

9    least as close to $3,000 per month per month for at least one year as available in the loan

10   marketplace.

11       65. As a result of defendants' negligence, plaintiff sustained damages in the sum of

12   $40,363.91 representing the difference between (a) the increase of the mortgage indebtedness

13   on plaintiff's home in the sum of $94,750.00 after GENESIS arranged the January 2007 loan

14   and the April 2007 loan, and (b) the total of the payments of plaintiff's non-mortgage debts,

15   property taxes, and insurance that were paid by the January 2007 loan and the April 2007 loan.

16       WHEREFORE, plaintiffs pray for relief as set forth below.

17                                   **XII.**

18                        **TENTH CLAIM FOR RELIEF**
                   **[Breach Of Contract Regarding The April 2007 Loan]**
19
20       69. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through29,

     inclusive, as though fully set forth herein.
21
22       70. Between November 2006 and January 18, 2007, plaintiff and GENESIS entered

23   into a contract evidenced by Exhibits "A" and "B" attached hereto under which GENESIS

24   agreed to (a) arrange a negative amortization mortgage loan for plaintiff secured by a deed of

     trust on plaintiff's home which loan would require monthly payments of no more than $3,000
25
26   per month, (b) not charge plaintiff any loan fees for said negative amortization mortgage loan,

     and (c) refund all appraisal fees plaintiff paid if for some unforeseen reason GENESIS did not
27
28   arrange said negative amortization loan, and plaintiff agreed to (d) employ GENESIS as

1    plaintiff's mortgage broker to arrange, first, a temporary mortgage loan and, second, a

2    subsequent mortgage loan that would be a negative amortization loan that would pay off and

3    replace the temporary mortgage loan and require monthly payments of no more than $3,000

4    per month, and (e) pay GENESIS'S loan fees, but not a Yield Spread Premium, for arranging

5    the temporary loan.

6        71. Plaintiff has performed all conditions, covenants, and promises required on his part

7    to be performed in accordance with the terms and conditions of the contract.

8        72. Between January 18, 2007 and April 4, 2007, GENESIS breached the contract by

9    (a) failing to arrange a negative amortization mortgage loan for plaintiff secured by a deed of

10   trust on plaintiff's home which would require monthly payments of no more than $3,000 per

11   month, (b) charging plaintiff loan fees for the April 2007 loan, and (c) failing and refusing to

12   refund the appraisal fee that plaintiff paid for April 2007 loan.

13       73. As a result of GENESIS'S breach of the contract, plaintiff sustained damages in

14   the sum of sum of $40,363.91 representing the difference between (i) the increase of the

15   mortgage indebtedness on plaintiff's home in the sum of $94,750.00 after GENESIS arranged

16   the January 2007 loan and the April 2007 loan, and (ii) the total of the payments of plaintiff's

17   non-mortgage debts, property taxes, and insurance that were paid by the January 2007 loan

18   and the April 2007 loan.

19       WHEREFORE plaintiff prays for relief as set forth below:

20       ## XIII.

21       **ELEVENTH CLAIM FOR RELIEF**
     **[Unfair Trade Practices - Business & Professions Code Section 17200]**

22       74. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 73,

23   inclusive, as though fully set forth herein.

24       75. Defendants' acts and omissions pertaining to its requesting and receiving Yield

25   Spread Premiums for the January 2007 and April 2007 loans in the sums of $14,507 and

26   $4,855, respectively, violates RESPA's prohibition set forth in 12 U.S.C. Section 2607(a)

27   against providers of settlement services from receiving referral fees and kickbacks for services

28

1    which have no value whatsoever to the consumer, and, consequently, constitutes an unlawful

2    business act or practice within the meaning of Business & Professions Code section 17200.

3        76. Defendants' acts and omissions pertaining to its requesting and receiving Yield

4    Spread Premiums for the January 2007 and April 2007 loans in the sums of $14,507 and

5    $4,855, respectively, without disclosing to plaintiff that defendants will receive Yield Spread

6    Premiums, that defendants' receipt of Yield Spread Premiums will cause the interest rates on

7    the January 2007 and April 2007 loans to be higher than the interest rates that plaintiff would

8    otherwise receive from the lenders, and that defendants' receipt of Yield Spread Premiums

9    will also cause the monthly payments on the January 2007 and April 2007 loans to be higher

10   than the monthly payment that plaintiff would otherwise have to pay on said loans, is an

11   incipient violation of RESPA's prohibition set forth in 12 U.S.C. Section 2607(a) against

12   providers of settlement services from receiving referral fees and kickbacks, and, consequently,

13   constitutes an unlawful business act or practice within the meaning of Business & Professions

14   Code section 17200.

15       77. Defendants' business practice of requesting and receiving Yield Spread Premiums

16   in the course of arranging consumer mortgage loans for borrowers without disclosing to

17   borrowers that defendants are requesting Yield Spread Premiums from lenders and that

18   defendants' receipt of Yield Spread Premiums will cause the interest rates and monthly

19   payments on borrowers' loans to be higher than the interest rates and monthly payments would

20   otherwise receive from the lenders is likely to mislead the general public and, consequently,

21   constitutes a fraudulent business act or practice within the meaning of Business & Professions

22   Code section 17200.

23       78. As a direct and proximate result of the acts and omissions referred to in paragraphs

24   75, 76, and 77, supra. defendants received and continue to hold money belonging to plaintiff

25   in the form of loan fees that plaintiff paid to GENESIS through the escrows that handled the

26   January 2007 and April 2007 loans, in the sums of $13,375 and $5,495, respectively, for a

27   total in loan fees of $18,870.

28       79. As a direct and proximate result of the acts and omissions referred to in

1     paragraphs 75, 76, and 77, supra. defendants received and continue to hold money belonging

2     to plaintiff in the form of Yield Spread Premiums for the January 2007 and April 2007 loans

3     in the sums of $14,507 and $4,855, respectively, for a total in Yield Spread Premiums of

4     $19,362.

5         WHEREFORE, plaintiff prays for relief as follows:

6         1. On the First Claim for Relief, pursuant to RESPA at 12 U.S.C. Section 2607(d)(2),

7     a monetary judgment in the sum of $43,521.00 representing three times the Yield Spread

8     Premium of $14,507 that defendants received for arranging the January 2007 loan;

9         2. On the Second Claim for Relief, a monetary judgment in the sum of $14,565.00

10     representing three times the Yield Spread Premium of $4,855 that defendants received for

11     arranging the January 2007 loan;

12         3. On the Third Claim for Relief:

13             (A) A monetary judgment for damages in the sum of $17,513.15 representing

14             all loan fees and other fees that plaintiff paid to defendants and other parties in

15             connection with the January 2007 loan; and

16             (B) Punitive damages in the sum of $300,000;

17         4. On the Fourth Claim for Relief, a monetary judgment for damages in the sum of

18     $17,513.15 representing all loan fees and other fees that plaintiff paid to defendants and other

19     parties in connection with the January 2007 loan;

20         5. On the Fifth Claim for Relief:

21             (A) A monetary judgment for damages in the sum of $9,694.00 representing all

22             loan fees and other fees that plaintiff paid to defendants and other parties in

23             connection with the April 2007 loan; and

24             (B) Punitive damages in the sum of $300,000;

25         6. On the Sixth Claim for Relief, a monetary judgment for damages in the sum of

26     $9,694.00 representing all loan fees and other fees that plaintiff paid to defendants and other

27     parties in connection with the April 2007 loan;

28         7. On the Seventh Claim for Relief, a monetary judgment for damages in the sum of

$17,513.15 representing all loan fees and other fees that plaintiff paid to defendants and other parties in connection with the January 2007 loan;

8. On the Eighth Claim for Relief, a monetary judgment for damages in the sum of $9,694.00 representing all loan fees and other fees that plaintiff paid to defendants and other parties in connection with the April 2007 loan;

9. On the Ninth Claim for Relief, a monetary judgment for damages in the sum of $40,363.91;

10. On the Tenth Claim for Relief, a monetary judgment for damages in the sum of $40,363.91;

11. On the Eleventh Claim for Relief, a judgment for restitution of (a) all loan fees that plaintiff paid to defendants in connection with both the January 2007 and April 2007 loans in the total amount of $18,870, and (b) the Yield Spread Premiums that defendants received from both the January 2007 and April 2007 loans in the total amount of $19,362.

12. For attorneys fees and costs of suit in connection with the First and Second Claims For Relief herein pursuant to 12 U.S.C. Section 2607(d)(5);

13. For any and further relief that the Court deems just.

Dated: December ___, 2007

ROBERT A. GOLDSTEIN,
A PROFESSIONAL LAW CORPORATION

By: _____
Jeff Pollack, Attorney for plaintiff
Chudi C. Iwu


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues triable by a jury in this Complaint.

Dated: December ___, 2007

ROBERT A. GOLDSTEIN,
A PROFESSIONAL LAW CORPORATION

By: _____
Jeff Pollack, Attorney for plaintiff
Chudi C. Iwu

# Exhibit A



Page 1 of 2



**Windows Live™ Hotmail**

# Hello Chudi, from Ron at Genesis

From: **Ron Graves** (RGraves@genesislendinggroup.com)
Sent: Fri 11/24/06 9:58 PM
To: lwuh@msn.com

Hello Chudi,

How are you?

I am writing to follow up with you regarding the appraisal fee.

Per our conversation; If for some unforeseen reason we are unable to do your loan or don't deliver the loan you want, we will gladly refund your appraisal fee.

As a part of our recent marketing campaign, we have been promising a refund of the appraisal fee as well; upon funding your loan.

Either way, you're in good hands!  It is a win-win.

I understand you are scheduled to have your property appraised on Sunday?

If you have any questions, you are welcome to call me on my cell: 949-370-1559.

We appreciate the opportunity to earn your business.

God bless you,

Ron Graves

President

Genesis Lending Group

8925 Research Drive

Irvine, Ca. 92618

(949) 271-8000  Phone

(949) 271-3994  Facsimile

rgraves@genesislendinggroup.com

www.genesislendinggroup.com

# Exhibit B

 **Windows Live™ Hotmail**

---

## (No Subject)

**From: Ron Graves** (RGraves@genesislendinggroup.com)
Sent: Sat 1/13/07 8:23 AM
To: iwuh@msn.com

---

Dear Mr. & Mrs. Chudi Iwu this email is to confirm our conversation in regards to the commitment of Genesis Lending Group to provide you with you next loan with zero origination points or Genesis Lending Group fees. This loan will be done in March 2007. We look forward to serving you and we greatly appreciate you business. Thank you and may God Bless you.

*Ron Graves*

*President & Founder*
*Customer Service Professional*
*Genesis Lending Group*
*8925 Research Drive*
*Irvine, California 92618*
*(949) 271-8007 direct*
*(949) 271-3994 facsimile*
*Please visit us on the web:*
*www.genesislendinggroup.com*

***The information contained in this e-mail transmission is confidential information, proprietary to the sender and legally protected. Its purpose is intended for the sole use of the individual or entity named in the message header. If you are not the intended recipient, you are hereby notified that any dissemination, copying or taking any action in reliance on the contents of this information is strictly prohibited. If you received this message in error, please notify the sender of the error and delete this message and any attachments.***

# Exhibit C



18008 Sky Park Circle, #200
Irvine, CA 92614

Phone: (949) 442-0412
Fax: (949) 442-0417

### BORROWER'S FINAL SETTLEMENT STATEMENT

| | | | |
|---|---|---|---|
| **PROPERTY:** | 59 Glen Canyon Court<br>Pittsburg, CA 94565 | **DATE:** | January 18, 2007 |
| | | **CLOSING DATE:** | January 18, 2007 |
| **BORROWER:** | Chudi Chudy Iwu and Loretta O. Iwu | **ESCROW NO.:** | 60018405 |

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| New 1st Trust Deed | | 725,350.00 |
| | | |
| **PAYOFF CHARGES - HSBC Mortgage Corporation** | | |
| **[Total Payoff $501,730.33]** | | |
| Principal Balance | 499,394.73 | |
| Interest on Principal Balance to 01/20/2007 | 2,298.60 | |
| Obligation Fee | 7.00 | |
| Unpaid Other Fees | 30.00 | |
| | | |
| **PAYOFF CHARGES - Bank of America** | | |
| **[Total Payoff $148,694.51]** | | |
| Principal Balance | 147,609.48 | |
| Interest on Principal Balance to 01/11/2007 | 737.03 | |
| Interest on Principal Balance from 01/11/2007 to 01/20/2007 | 273.00 | |
| Obligation Fee | 45.00 | |
| Statement Fee | 30.00 | |
| | | |
| **LOAN INFORMATION - Countrywide Home Loans** | | |
| Tax Service to Countrywide Tax Service | 80.00 | |
| Flood to Landsafe Flood Determination Inc | 26.00 | |
| Processing Fee to Genesis Lending Group Inc. | 895.00 | |
| Broker Application to Genesis Lending Group Inc. | 905.00 | |
| Broker Admin to Genesis Lending Group Inc. | 695.00 | |
| Underwriting to Countrywide Home Loans | 795.00 | |
| Premium Pd to Genesis Lending Group by CHL  POC $14,507.00 | | |
| to Genesis Lending Group Inc. | | |
| Broker Fee to Genesis Lending Group Inc. | 10,880.25 | |
| Interest at $201.7100/day from 01/17/2007 to 02/01/2007 to | 3,025.65 | |
| Countrywide Home Loans | | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| Residence Mutual Insurance Co for Fire Insurance | 680.00 | |
| SoCal Signing Company for Notary and Signing Services | 290.00 | |
| Chase For Payoff | 16,970.00 | |
| Citi For Payoff | 13,947.00 | |
| Bank of America For Payoff | 2,258.00 | |
| HSBC/ Levitz For Payoff | 1,799.00 | |
| Kraft/ GEMB For Payoff | 1,480.00 | |
| AMEX For Payoff | 1,921.00 | |
| THD/ CBSD For Payoff | 783.00 | |
| Santa Clara County For Payoff | 659.00 | |
| Chase / CC For Payoff | 114.00 | |
| Federal Express for Overnight Delivery | 75.00 | |
| Orange County Messenger for Messenger Service | 74.90 | |
| | | |
| **TITLE/TAXES/RECORDING CHARGES** | | |
| ALTA Loan Policy Fee to United Title Company | 1,542.00 | |
| Policy Endorsements to United Title Company | 50.00 | |
| Messenger Fee to United Title Company | 36.00 | |
| Reconveyance Fee to United Title Company | 15.00 | |
| Sub Escrow Fee to United Title Company | 125.00 | |
| Recording Trust Deed | 124.00 | |
| Current Taxes | 2,659.05 | |
| | | |
| **ESCROW CHARGES** | | |
| Escrow Fee | 550.00 | |
| Doc Fee | 50.00 | |
| Wire Fee | 50.00 | |
| Disbursement Fee ($15.00 each) | 150.00 | |
| | | |
| Refund | 6,221.31 | |

Date: January 18, 2007                                    Escrow No.: 6081840

Page 2 of 2:

|  | DEBITS | CREDITS |
|---|---|---|
| TOTAL | $ 725,350.00 | $ 725,350.00 |

**SAVE THIS STATEMENT FOR INCOME TAX PURPOSES**

# Exhibit D



18008 Sky Park Circle, #200
Irvine, CA 92614

Phone: (949) 442-0412
Fax: (949) 442-0417

## BORROWER'S FINAL SETTLEMENT STATEMENT

**PROPERTY:**   59 Glen Canyon Court
Pittsburg, CA 94565

**DATE:**   April 4, 2007

**CLOSING DATE:**   April 3, 2007

**BORROWER:**   Chudi Chudy Iwu and Loretta O. Iwu

**ESCROW NO.:**   70019164

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| New 1st Trust Deed | | 747,000.00 |
| | | |
| **PAYOFF CHARGES - Countrywide Home Loans** | | |
| **[Total Payoff $732,637.78]** | | |
| Principal Balance | 725,350.00 | |
| Interest on Principal Balance to 04/05/2007 | 7,143.78 | |
| Obligation Fee | 45.00 | |
| Recording Fee | 9.00 | |
| Statement Fee | 90.00 | |
| | | |
| **LOAN INFORMATION - Mortgage Investment Lending Associates** | | |
| Appraisal Fee to More Appraisals POC $395.00 | | |
| Credit Report to Mortgage Investment Lending Associates | 15.90 | |
| Brokerage Fee to Genesis Lending Group Inc. | 3,000.00 | |
| Tax Registration to Mortgage Investment Lending Associates | 60.00 | |
| Flood Cert Fee to Mortgage Investment Lending Associates | 7.00 | |
| Processing Fee to Genesis Lending Group Inc. | 895.00 | |
| Broker Application Fee to Genesis Lending Group Inc. | 1,600.00 | |
| Doc Prep Fee to Mortgage Investment Lending Associates | 50.00 | |
| Lender Loan Fee to Mortgage Investment Lending Associates | 890.00 | |
| Aggregate Reserves to Mortgage Investment Lending Associates | (607.90) | |
| YSP paid by MILA  POC $4,855.50 to Genesis Lending Group Inc. | | |
| Interest at $158.2200/day from 04/04/2007 to 04/01/2007 to Mortgage Investment Lending Associates | | 474.66 |
| Insurance @ $205.43/mo for 3 mos to Mortgage Investment Lending Associates | 616.29 | |
| Taxes @ $607.86/mo for 4 mos to Mortgage Investment Lending Associates | 2,431.44 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| Federal Express for Overnight Delivery  POC $982.00 | | |
| SoCal Signings | 250.00 | |
| Chase for payoff | 293.00 | |
| | | |
| **TITLE/TAXES/RECORDING CHARGES** | | |
| ALTA Loan Policy Fee to Old Republic | 1,350.00 | |
| Policy Endorsements to Old Republic | 25.00 | |
| Messenger Fee to Old Republic | 17.10 | |
| Wire Fee to Old Republic | 25.00 | |
| Sub Escrow Fee to Old Republic | 115.00 | |
| Recording Trust Deed | 64.00 | |
| Recording for 2nd | 28.00 | |
| | | |
| **ESCROW CHARGES** | | |
| Escrow Fee | 550.00 | |
| Loan Tie-In Fee | 150.00 | |
| Doc Prep | 50.00 | |
| Disbursement Fee | 15.00 | |
| Federal Express | 100.00 | |
| | | |
| Refund | 2,847.05 | |
| | | |
| **TOTAL** | **$ 747,474.66** | **$ 747,474.66** |

CERTIFIED TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL

BY: _____

SAVE THIS STATEMENT FOR INCOME TAX PURPOSES

PAYOFF BREAKDOWN(S)
Payoff to Countrywide Home Loans
TOTAL $732,637.78

| | |
|---|---|
| Principal Balance | 725,350.00 |
| Interest on Principal Balance to 04/05/2007 | 7,143.78 |
| Obligation Fee | 45.00 |
| Recording Fee | 9.00 |
| Statement Fee | 90.00 |

ADDITIONAL ITEMS PAYABLE IN CONNECTION WITH LOAN

| | BORROWER | SELLER |
|---|---|---|
| Broker Application Fee to Genesis Lending Group Inc. | 1,600.00 | |
| Doc Prep Fee to Mortgage Investment Lending Associates | 50.00 | |
| Lender Loan Fee to Mortgage Investment Lending Associates | 890.00 | |
| YSP paid by MILA  POC $4,855.50 to Genesis Lending Group Inc. | | |
| Total to line 811 | 2,540.00 | |

ADDITIONAL ESCROW AND TITLE CHARGES

| | BORROWER | SELLER |
|---|---|---|
| Wire Fee to Old Republic | 25.00 | |
| Sub Escrow Fee to Old Republic | 115.00 | |
| Loan Tie-In Fee to The Escrow Factory, Inc. | 150.00 | |
| Doc Prep to The Escrow Factory, Inc. | 50.00 | |
| Disbursement Fee to The Escrow Factory, Inc. | 15.00 | |
| Federal Express to The Escrow Factory, Inc. | 100.00 | |
| Total to line 1113 | 455.00 | |

CERTIFIED TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL

BY:_____